Wayne Anderton appeals from a judgment based on a directed verdict in favor of Wayne Gentry and The Citizens Bank of Moulton in a defamation action.
The issues in this case are whether the alleged defamatory statements would be slander per se or slander per quod and whether these statements gave rise to a claim based on the tort of outrage.
Anderton alleges that Gentry, president of Citizens Bank, made slanderous statements to two people concerning bank loans made by Anderton in his capacity as a vice-president and branch manager of Citizens Bank. On July 27, 1987, around 9:12 p.m., Gentry called Jim Smith to inquire about an overdue payment on a loan made to Smith's wife. Anderton alleges that Gentry made statements to Smith insinuating that Anderton had made the loan to Smith's wife in exchange for sexual intercourse. Smith testified that Gentry asked him what kind of relationship his wife had had with Anderton in order to receive this loan. Smith also testified that Gentry said Smith should watch Anderton and his wife closely. Gentry admitted that he called Smith concerning the delinquent loan payment *Page 1263 
but denied making the statements suggesting sexual relations between Smith's wife and Anderton.
Gentry also telephoned Denise Killough on the evening of July 27, 1987, concerning a late payment on a loan made to a bank customer named Angela Malone. Killough testified that Malone had lived with her for a short time but had since moved away. Killough also testified that Gentry asked if Malone was Anderton's girlfriend and whether Malone had received the loan because of their relationship. Gentry admitted dialing Killough's telephone number and inquiring about Malone's delinquent loan payment but denied making any comments about a loan made in exchange for sexual intercourse.
Although this is not a case of wrongful termination, we note that Anderton was notified that he was being fired from Citizens Bank on July 28, 1987. Anderton testified that as a result of these alleged statements and questions, he could not find another job that paid as well as his job at the defendant's bank. Anderton also testified that the statements had injured his business reputation and had caused him mental anguish. On cross-examination, Anderton admitted that he had sought jobs only at two other banks. Anderton also admitted that he had received no indication that the reason he was not hired by those banks was Gentry's alleged statements.
Gentry and Citizens Bank moved for a directed verdict pursuant to Rule 50(a), A.R.Civ.P. The trial court granted the motion, specifically finding that the statements and questions attributed to Gentry did not amount to slander per se but rather constituted slander per quod. The court found that Anderton had not proved the special damages as required in a case of slander per quod.
In reviewing the ruling on a motion for a directed verdict, this Court will make a "purely objective determination of whether the party having the burden of proof has produced evidence requiring a resolution by the jury." Ex parte Oliver,532 So.2d 627, 628 (Ala. 1988). This Court will view the tendencies of the evidence in a light most favorable to the nonmovant, regardless of the view the court has as to the weight of the evidence, and must allow such reasonable inferences as the jury was free to draw, not the inferences this Court may think are more probable. Walker-Waddell Realty,Inc. v. Kresge, 533 So.2d 573 (Ala. 1988).
"To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent, in publishing a false and defamatory statement to another concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091
(Ala. 1988).
The specific defamation involved in this case is slander. Generally, in slander there must be an oral communication of a defamatory matter to a third person. Nelson v. Lapeyrouse GrainCorp., supra. There are two types of slander, that is, slander per se and slander per quod. Slander per se is actionable if it imputes to the plaintiff an indictable offense involving infamy or moral turpitude. Lewis v. Ritch, 417 So.2d 210
(Ala.Civ.App. 1982). Damage is implied by law when spoken words are found to be slander per se. Slander per quod is a communication to a third person of a defamatory statement subjecting the plaintiff to disgrace, ridicule, odium, or contempt although not imputing the commission of a crime involving infamy or moral turpitude.Ceravolo v. Brown, 364 So.2d 1155 (Ala. 1978).
In the present case, the trial court specifically found that the alleged statements made by Gentry were slander per quod. We agree. The defamatory statements attributed to Gentry are accusations that Anderton made a loan to Mrs. Jim Smith because of an illicit relationship and that Anderton made a loan to Angela Malone because of a relationship with her. Anderton asserts that by these statements, Gentry was charging him with adultery and with soliciting prostitution. However, *Page 1264 
the statements made by Gentry do not suggest actions within the definitions of adultery, § 13A-13-2, Code of Alabama 1975, or prostitution, § 13A-12-110 through -113, Code of Alabama 1975.
Because the statements imputed to Gentry do not suggest a crime of infamy or moral turpitude, the statements are considered slander per quod.
Because the statements amounted only to slander per quod, Anderton must plead and prove special damages. See Gray v. WALATV, 384 So.2d 1062 (Ala. 1980). Anderton did not allege special damages in his complaint and there was no evidence of special damages presented in court. Thus, Anderton failed to prove the damages that must be proved in a case of slander per quod.
We also agree with the trial court that Anderton did not prove facts supporting his claim of outrage. In order to prevail on a claim of outrage, the plaintiff must produce evidence that the defendant engaged in extreme and outrageous conduct, intentionally or recklessly, and thereby caused severe emotional distress to another. American Road Serv. Co. v.Inmon, 394 So.2d 361, 365 (Ala. 1980). A defendant committing conduct actionable as "outrageous conduct" is liable for damages for resulting emotional distress and bodily harm to his victim; but to be actionable, the outrageous conduct must be so severe and extreme that no one could be expected to endure it.Id. We have said that for the conduct to be actionable, it must be so extreme "in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Inmon, 394 So.2d at 365. Although the alleged statements in the present case would have been humiliating and insulting, the tort of outrage does not provide recovery for " 'mere insults, indignations, threats, annoyances, petty oppressions, or other trivialities.' " Inmon,394 So.2d at 364-65 (citation omitted).
We affirm.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.